UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DENNIS M. SANABRIA,

       Plaintiff,

v.                               CASE No. 8:06-CV-2252-T-30TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,[1]

       Defendant.

_____

## REPORT AND RECOMMENDATION

       The plaintiff in this case seeks judicial review of the denial of his claim for Social Security disability benefits.[2] Because the decision of the Commissioner of Social Security is supported by substantial evidence, I recommend that the decision be affirmed.

I.

---

[1] Michael J. Astrue has become the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, he should be substituted as the defendant in this suit.

[2] This matter comes before the undersigned pursuant to the Standing Order of this court dated January 5, 1998. See also Local Rule 6.01(c)(21).

The plaintiff, who was forty-eight years old at the time his insured status expired and who has a high school education, has worked primarily as a firefighter. He filed a claim for Social Security disability benefits, alleging that he became disabled due to insufficient lung capacity, heart arrhythmia, and a knee injury (Tr. 104). The claim was denied initially and upon reconsideration.

The plaintiff, at his request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had cervical, thoracic and lumbosacral strain, chronic right knee pain, atypical chest pain, pulmonary insufficiency, and a history of syncope (Tr. 25). He concluded that these impairments limited the plaintiff to a restricted range of light work, but, as indicated by a vocational expert, did not prevent the plaintiff from performing work that exists in the national economy. Accordingly, the law judge decided that the plaintiff was not disabled. The Appeals Council let this decision stand as the final decision of the Commissioner.

The plaintiff then sought judicial review of the Commissioner's decision in this court. See Case No. 8:00-CV-535-T-24(B). In a Report and

Recommendation, I recommended that the decision be reversed and remanded because the law judge's credibility determination was flawed (Tr. 452). In this respect, I pointed out that the law judge had improperly relied upon statements of the plaintiff's daily activities that did not reflect the plaintiff's subsequent automobile accident (Tr. 456). It was also noted that the law judge's credibility determination did not cover all of the plaintiff's subjective complaints (Tr. 457). This recommendation was accepted by the court, and, thus, the decision was reversed and the case was remanded (Tr. 450-51).

On remand, a second hearing was conducted by the same law judge. The law judge concluded that the plaintiff had a combination of severe impairments that limited him to a full range of sedentary work (Tr. 442). He then applied the medical-vocational guidelines to decide that the plaintiff was not disabled (id.).

Upon the plaintiff's request for review, the Appeals Council vacated the law judge's decision and remanded the matter for another hearing (Tr. 426). In its Order, the Appeals Council indicated that the law judge should properly evaluate the opinions of a treating source and obtain evidence from a vocational expert (Tr. 426-27).

On this remand, a third hearing was conducted by a different law judge. The law judge noted that the plaintiff alleged a disability onset date of June 26, 1997, and that he was last insured for disability benefits on December 31, 2002 (Tr. 404-05). The law judge concluded that, during that period, the plaintiff suffered from a mildly restrictive lung disease, status post pulmonary embolus, cardiac arrhythmia with premature atrial and ventricular contractions, and central disc protrusions at the lower four levels of the cervical spine with effacement of the cervical cord at the lower two levels (Tr. 406). He determined further that these impairments in combination were severe (id.). The law judge found that the impairments limited the plaintiff as follows (Tr. 417):

> He was able to lift and carry up to twenty pounds occasionally and less than twenty pounds frequently and was able to sit or stand throughout an eight-hour day providing he could alternate positions as needed for comfort. He required a temperature-controlled environment without exposure to temperature extremes, dusts, fumes or gases. He had to avoid work around moving machinery and jobs requiring climbing, balancing or driving.

The law judge ruled that these restrictions prevented the plaintiff from returning to work as a firefighter. However, based on the testimony of a vocational expert, the law judge concluded that there were jobs in the national economy that the plaintiff could perform, such as ticket seller, general office clerk, and photocopy machine operator (Tr. 418). Accordingly, he decided that the plaintiff was not disabled.

The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner. In doing so, the Appeals Council set forth reasons why the arguments that are essentially repeated in this court did not warrant its review (Tr. 372).

The plaintiff then timely filed this lawsuit.

## II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical,

-5-

physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3). In this case, furthermore, the plaintiff must show that he became disabled before his insured status expired on December 31, 2002. 42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied, 544 U.S. 1035 (2005).

-6-

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

### III.

The plaintiff filed an application for Social Security disability benefits in January 1997 alleging an inability to work since the end of 1995 primarily due to pulmonary and cardiac problems. On June 26, 1997, he was

involved in a rear-end collision in which he sustained neck and back injuries. The plaintiff's neck and back condition is the most severe of the plaintiff's problems. This is reflected in the plaintiff's amendment of his disability onset date from December 31, 1995, to the date of his car accident on June 26, 1997.

The law judge concluded that, despite the combination of the plaintiff's impairments, the plaintiff could perform a restricted range of light work. The plaintiff raises five issues in his challenge to the law judge's decision.

The plaintiff argues first that the law judge failed to follow the Appeals Council's Order setting forth directions for the second remand. This contention is meritless.

In the first place, the plaintiff has not cited any legal authority supporting the proposition that a failure to follow directions from the Appeals Council constitutes reversible error. The issue in this case is whether the plaintiff can demonstrate some violation of Social Security law and not whether there is some intra-agency administrative deficiency. In other words, unless the plaintiff can establish that the Social Security Act, its regulations,

or cases interpreting those requirements, have been contravened, there is no justification for this court to remand the matter.

In any event, there was no violation of the Appeals Council's directive here. That is demonstrated by the fact that this argument was made to the Appeals Council (Tr. 376-78), and they did not accept it (see Tr. 372).

The plaintiff argues second that the law judge failed to give proper weight to the opinion of treating neurologist, Dr. Robert Martinez. Dr. Martinez expressed opinions that the plaintiff had severe functional limitations and was 100% disabled.

Notably, the law judge specifically assessed Dr. Martinez's opinions (Tr. 413-14). And, contrary to the plaintiff's assertion in his first contention, he did so in accordance with the directions from the Appeals Council.

Opinions from treating physicians are entitled to substantial or considerable weight unless there is good cause for not giving them such weight. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or when the opinion is

conclusory or inconsistent with the physician's own medical records.  <u>Lewis</u>

v. <u>Callahan</u>, 125 F.3d 1436, 1440 (11th Cir. 1997).

The law judge stated that he found the opinions of Dr. Martinez

regarding disability to be entitled to little weight (Tr. 415).  The law judge

said in this respect (Tr. 414):

> Dr. Martinez has stated that the claimant is 100%
> totally disabled and could not perform certain jobs
> such as toll collector.  Such statements, though
> made by a treating physician, are not entitled to
> significant weight because they are conclusory,
> they are not supported by a preponderance of the
> evidence of record, including Dr. Martinez's own
> treatment notes for the period at issue, and they are
> opinions on issues reserved to the Commissioner
> (20 CFR §404.1527).  As such, these opinions are
> not entitled to any special significance.

These are adequate reasons for discounting Dr. Martinez's opinions of total

disability.

Moreover, throughout his decision, the law judge made other

statements that support his determination to discount Dr. Martinez's opinions.

Thus, the law judge pointed out (Tr. 408):

> Complaints   and   findings   were   essentially
> unchanged on examinations in November 1997 and
> January 1998.  There were no motor, sensory or

reflect abnormalities, but there were findings of muscle spasm. Dr. Martinez found no further testing was needed and stated that the claimant had reached maximum medical improvement with a 23% permanent impairment of the body as a whole. The doctor found only a 9% impairment due to the claimant's spinal condition but a 15% impairment due to insomnia that reportedly resulted from pain and caused the claimant to wake up two or three times a night. The claimant was to adjust his lifestyle according to his symptoms, to exercise daily, including home exercises for the neck and back, walking, swimming, stationary bicycling and rowing, and to avoid jumping and bouncing, lifting more than twenty pounds from a bent position and ten pounds repetitively, avoid keeping the neck or back in a bent position for more than thirty minutes at a time and avoid a cold, confined environment. The claimant was prescribed the anti-inflammatory, Naprosyn and the anti-spasmodic, Skelaxin, to be taken as necessary (Exhibit 13F). In a medical source statement dated February 1998, Dr. Martinez stated that the claimant should never climb, balance, stoop, crouch, kneel or crawl. He further indicated that the claimant's reaching, pushing and pulling would aggravate his symptoms; however, it is difficult to reconcile such limitations with the prescribed activities of swimming and rowing, for example.

The law judge said further (Tr. 409):

Reports from Drs. Martinez, [Mark A.] Smith and [Jaime F.] Casellas through the remainder of 1998 show no significant changes in symptoms or

-11-

findings. Dr. Martinez's recommendations and restrictions were unchanged as was the claimant's disability rating, as set forth in progress notes.

. . .

Throughout 1999, Dr. Martinez reported no real change in symptoms or findings on physical examination. He noted an alleged inability to work due to a combination of cardiac, pulmonary and musculoskeletal impairments although there is no indication that he had information other than the claimant's allegations regarding the cardiac and pulmonary impairments. Through August 1999, Dr. Martinez reported no additional types of treatment to that provided previously (Exhibit 15F). Nevertheless, he completed a functional capacity statement in November 1999 in which he stated that the claimant was 100% disabled. With a general rather than specific explanation as to why, he stated, for example, that the claimant could sit, stand or walk for no more than one hour each in an eight-hour workday due to his cardiac, pulmonary and disc abnormalities. While he said the claimant could lift and carry up to twenty pounds occasionally, and could use his hands for repetitive, simple grasping and fine manipulation, he indicated that the claimant could not use his hands for repetitive pushing and pulling due to his combined impairments. Similarly, he stated that the claimant could use each foot for repetitive movements in operating foot controls, but not both feet, again due to combined impairments.

Along the lines that the law judge noted, Dr. Martinez's treatment notes reflect an inexplicable increase in the plaintiff's disability rating. Thus, following an examination on June 10, 1999, Dr. Martinez stated that the plaintiff had a 23% permanent impairment rating to the body as a whole (some of which may have been due to insomnia) (Tr. 513). However, after an examination on August 25, 1999, Dr. Martinez stated that the plaintiff was 100% permanently totally disabled (Tr. 511). There are no apparent differences in these two examinations that could explain this dramatic increase in the disability rating.

In addition, the law judge considered the consultative examination in May 2001 by an orthopedist, Dr. Steven A. Field, who had reviewed earlier medical reports, including the August 1997 MRI and the reports of Dr. Martinez. Dr. Field noted some, but not many, abnormalities (Tr. 555-57). He opined that the plaintiff could "perform an office[-]type job in which he is allowed to stand and periodically stretch" and which does not involve lifting more than twenty pounds on a frequent or occasional basis (Tr. 557). The law judge indicated that he took Dr. Field's opinion into account

when deciding to give little weight to Dr. Martinez's opinions of total

disability (Tr. 415).

        The law judge also said (Tr. 413):

> Dr. Martinez reported that the great part of the
> disability rating of 23% he gave to the claimant
> was based on insomnia rather than spinal
> impairment. Prior to November 1999, Dr. Martinez
> did not provide specific limitations that were
> indicative of the 100% disability rating he
> suggested thereafter.    Yet there was no
> demonstrated change in the claimant's condition at
> that time or later.  Dr. Martinez also continued to
> reference the claimant's pulmonary and cardiac
> conditions as part of the basis for his opinion of
> disability until he submitted his June 2000
> statement to an insurance company. Again, there
> was no reported change in the claimant's
> musculoskeletal or neurological condition at that
> time.    Orthopedic examination in May 2001
> certainly suggests less in the way of abnormalities
> and more in the way of functional ability while still
> finding the claimant to be limited   by his
> impairments. Dr. Field even commented favorably
> on the fact that the claimant, despite chronic pain,
> did not show any real signs or symptoms of
> significant distress during the examination.

        These statements clearly demonstrate that the law judge

appropriately rendered an evaluation of Dr. Martinez's opinions. Moreover,

he adequately explained why he gave little weight to the opinions of total disability. This court is not entitled to second-guess that determination.

The plaintiff's third argument is that the law judge used improper standards (Doc. 14, p. 12). What improper standards were allegedly used is unclear.

The plaintiff may be asserting that, in determining the plaintiff's residual functional capacity, the law judge was not considering a work schedule of forty hours per week. There is no basis for this assertion. There is a common understanding that a forty-hour week is what is contemplated. Notably, the same lawyer has made a variation of this argument before, and I have recommended that it should be rejected. See Lovell v. Commissioner, Case No. 8:04-CV-2451-T-27TGW (Doc. 16, p. 16); Skelton v. Commissioner, Case No. 8:06-CV-1588-T-23TGW (Doc. 17, pp. 9-11).

The plaintiff also asserts that the law judge improperly referred to the "preponderance of the evidence." In this case, in evaluating Dr. Martinez's opinions, the law judge stated that "they are not supported by a preponderance of the evidence of record" (Tr. 414). In this context, the law

judge simply meant that the weight of the evidence in the record was against Dr. Martinez's opinions. There is nothing improper in that analysis.

Moreover, while judicial review of Social Security decisions is under a substantial evidence test, determinations by the law judge are appropriately based on a preponderance of the evidence. See Gibson v. Heckler, 762 F.2d 1516, 1518 (11th Cir. 1985); Gildon v. Astrue, 2008 WL 186940 at *2 (7th Cir. 2008). The plaintiff is therefore mistaken to argue that the term "preponderance of the evidence" has no place in Social Security determinations.

The plaintiff's fourth contention is that the law judge failed to consider all of his impairments. The law judge expressly considered the combined effects of the plaintiff's "mildly restrictive lung disease status pulmonary embolus; cardiac arrhythmia with premature atrial and ventricular contractions; and central disc protrusions at the lower four levels of the cervical spine with effacement of the cervical cord at the lower two levels" (Tr. 406).

The plaintiff attempts to make an argument based upon a purported difference between a disc herniation and a disc protrusion (Doc. 14,

p. 14). However, he fails to provide any basis for concluding that such a distinction would make a difference in this case.

In all events, the MRI in this case refers to disc protrusions (Tr. 549). Consequently, the law judge did not err in using that term.

The plaintiff may also be asserting that the law judge failed to consider allegations of lightheadedness and dizziness with a history of syncope (Doc. 14, p. 14). The law judge, however, appropriately set forth the evidence concerning those problems (Tr. 407, 409, 410, 412). This demonstrates that the law judge did not overlook these alleged impairments.

Significantly, the law judge found the plaintiff's allegations of pain and other symptoms to be out of proportion to the reported treatment and medical findings and to be magnified (Tr. 412). The law judge's credibility determination would appropriately cover the plaintiff's allegations of lightheadedness, dizziness, and history of syncope. Importantly, the plaintiff did not raise an issue concerning the law judge's credibility determination. Consequently, any such challenge should be deemed abandoned.

It is appropriate to add that the Appeals Council commented on this contention as follows (Tr. 372):

You indicated that all impairments were not considered because the Administrative Law Judge did not find lightheadedness, dizziness and a history of syncope to be severe impairments. The Council notes that the period at issue is June 26, 1997[,] through December 31, 2002. Evidence from May 19, 1997[,] noted occasional dizziness (TR 231) but this was not alleged in an examination on October 22, 1997 (TR 340-345). "Some dizziness" was alleged when the claimant [was] seen on November 19, 1997 (TR 338) but it was not mentioned when the claimant was seen on January 6, 1998 (TR 335). On February 18, 1998, the claimant alleged lightheadedness with exertion (TR 346). It was not mentioned on April 27, 1998, June 17, 1998, September 17, 1998, October 22, 1998, January 21, 1999, May 17, 1999, June 10, 1999, August 25, 1999, June 5, 2000, November 22, 2000, or April 12, 2002 (Exhibit 15F). On July 22, 1998[,] and November 3, 1999, Dr. Smith noted the claimant had occasional lightheadedness with exertion but no syncope (Exhibit 16F, pages 9 and 17). Dr. Smith made similar observations on June 28, 2000, December 14, 2000[,] and May 2, 2001 (Exhibit 16F, pages 1-3). Dr. Field did not note any dizziness or lightheadedness in the consultative examination on May 25, 2001 (Exhibit 20F).

Accordingly, the plaintiff's argument on this point lacks merit.

The plaintiff's final argument concerns the hypothetical questions asked the vocational expert. The plaintiff argues that the expert's testimony was flawed because she was permitted, due to a scheduling

conflict, to provide her testimony and be excused before the plaintiff's testimony was completed. This contention is baseless.

The expert was not a fact-finder; she was a witness. Her role was to answer hypothetical questions posed to her. Her answers did not depend on the plaintiff's testimony. Therefore, there was no error in permitting the expert to leave before the plaintiff had finished his testimony. This type of accommodation is regularly made in court.

The plaintiff also asserts that, because the law judge in the second decision found the plaintiff to be restricted to sedentary work, that limitation had to be included in the hypothetical question, and the Commissioner was estopped to change it. The plaintiff cites no authority to support this argument. In any event, it is patently meritless since the Appeals Council vacated that decision (and it did so based upon the plaintiff's exceptions) (Tr. 426-28).

IV.

For the foregoing reasons, the decision of the Commissioner is

supported by substantial evidence. I, therefore, recommend that the decision be affirmed.

Respectfully submitted.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: FEBRUARY _11_, 2008

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. 636(b)(1).